UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case Nos. 08-CR-0270(5) (PJS/JJK) |
| Plaintiff, | 11-CV-0129 (PJS) |
| v. | ORDER |
| BRIAN KEITH SCOTT, | |
| Defendant. | |

---

Brian Keith Scott, pro se.

Michael L. Cheever, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Defendant Brian Scott was one of six tax protesters indicted for various tax-related crimes. Two of Scott's co-defendants pleaded guilty, one was a fugitive, and two went to trial with him. The jury convicted Scott and his two co-defendants on all charges, and Scott was sentenced to 78 months in prison and three years of supervised release. This matter is now before the Court on Scott's motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence. For the reasons stated below, the motion is denied. Because the record conclusively demonstrates that Scott is not entitled to relief, no hearing is necessary. 28 U.S.C. § 2255(b); *Noe v. United States*, 601 F.3d 784, 792 (8th Cir. 2010).

Scott raises three grounds in his § 2255 motion: First, Scott claims that he was denied his Sixth Amendment right to counsel when the Court permitted him to proceed pro se. Second, Scott argues that he received ineffective assistance of counsel from the time his counsel was

initially appointed until Scott began representing himself. Finally, Scott claims that his standby counsel was ineffective.[1] All of Scott's arguments are frivolous.

### A. Ground One

Scott's conduct throughout the underlying proceedings was manipulative and seemed intended more to make a political statement or create grounds for appeal than to defend the charges against him. For example, Scott repeatedly complained that he was in "want of counsel" and took the position — as he does now in his § 2255 motion — that his pro se status was forced on him by the Court.[2] *See, e.g.*, Docket No. 65-1. Scott was — and is — incorrect. As the record conclusively demonstrates, Scott's pro se status was entirely the product of Scott's own choices. On the one hand, Scott refused to accept representation from any attorney who would be compensated by the government, on the ground that such an attorney would have a conflict of interest in representing him against charges brought by the government. On the other hand, Scott insisted that he could not find a private attorney willing to represent him. The Court repeatedly challenged Scott to suggest a third option, but Scott was never able to do so, other than to suggest that his trial be postponed indefinitely — perhaps for years — until Scott somehow was able to retain private counsel.

---

[1]Scott's § 2255 motion does not include a separately numbered third ground; instead, Scott argues that his standby counsel was ineffective as part of Ground One of his motion. Because whether Scott received ineffective assistance of standby counsel is analytically distinct from whether Scott knowingly and voluntarily waived his right to counsel, the Court treats these as separate grounds.

[2]It appears to the Court that Scott could have, but did not, raise this argument in his direct appeal. *See United States v. Beale*, 620 F.3d 856, 866-67 (8th Cir. 2010) (considering, on direct appeal, defendant's argument that district court erroneously permitted him to proceed pro se). The government does not oppose Ground One on this basis, however, so the Court addresses it on the merits.

Specifically, on August 21, 2008, shortly after Scott's initial appearance, the Court appointed attorney Arthur Martinez to represent him. *See* Docket No. 21. Two weeks later, on September 4, Scott sent a letter to Martinez terminating the representation because (in Scott's opinion) the fact that Martinez was being compensated by the government created a conflict of interest. Docket No. 43 at 2. Scott filed a copy of this letter with the Court. *See* Docket No. 43.

At the September 17, 2008 arraignment hearing, Magistrate Judge Jeffrey J. Keyes inquired about Scott's objections to Martinez. Docket No. 89 at 5-6. Judge Keyes explained that if there was any problem unique to Martinez, Judge Keyes could appoint another attorney to represent Scott. *Id.* at 6. Scott clarified that his only objection to Martinez was that Martinez was being compensated by the government. *Id.* Judge Keyes then explained that, if Scott did not want Martinez to represent him, there would be a period of time during which he would be proceeding pro se. *Id.* at 7. Judge Keyes also warned Scott that the case would be complex, that proceeding pro se was a bad idea, and that the Court would not provide him with legal advice or tell him how to proceed. *Id.* at 7-9, 17.

After Judge Keyes finished his inquiry, the prosecutor asked some followup questions, advising Scott that he had a constitutional right to counsel, *id.* at 11; that if he could not afford an attorney, he had the right to have one appointed for him, *id.*; that if he did not retain his own attorney and refused court-appointed counsel, he would have to proceed pro se because the case would not be put on hold, *id.* at 12-14; that neither the judge nor the prosecutor would help him with his case, *id.* at 15-16; and that it would be better for him to have counsel than to proceed pro se, *id.* at 16. At no point did Scott express any willingness to be represented by Martinez (or any

other court-appointed lawyer); to the contrary, Scott said that he would object to *any* court-appointed attorney. *Id.* at 18.

After the arraignment, Judge Keyes issued a written order granting Scott's motion to proceed pro se (which Martinez had filed on Scott's behalf). *See* Docket No. 53. Scott filed an objection, contending that he had not asked to proceed pro se and that he was still in want of counsel. Docket No. 65. The Court overruled Scott's objection, explaining that Scott's refusal to accept court-appointed counsel and his failure to retain a private attorney necessarily meant that he was proceeding pro se by his own choice. Docket No. 72 at 2.

At the November 26, 2008 final pretrial conference, the Court again inquired about Scott's pro se status and conducted a second *Faretta* hearing.[3] Docket No. 369 at 6-30. The Court informed Scott that he had the right to be represented by an attorney and that if he could not afford one the Court would appoint one for him at no charge, *id.* at 6; explained the nature of the charges against him and the possible penalties he was facing, *id*. at 12-18; inquired about Scott's level of education and his experience with the legal system, *id.* at 10, 18-19; explained that Scott could not expect any legal advice or assistance from the Court, *id.* at 24; advised Scott that he would be expected to follow all applicable rules, *id.* at 24-26; repeatedly warned Scott about the dangers and difficulties of self-representation, *id.* at 24-25, 28-29; explained the limited role that standby counsel would serve, *id.* at 27-28; and urged Scott to permit Martinez to represent him, *id.* at 29.

Scott confirmed that he did not want Martinez to represent him. *Id.* at 19-20. Scott also confirmed that he had no problem with Martinez other than the fact that Martinez was being paid

---

[3]*See Faretta v. California*, 422 U.S. 806 (1975).

by the government. *Id.* at 20.  Scott admitted that he knew that any lawyer appointed by the Court would be compensated by the government and stated that he would object to representation by *any* court-appointed attorney. *Id.* at 20.  The Court explained to Scott that his concern about a purported conflict of interest was unfounded:

> I have tried many cases involving federal public defenders and CJA attorneys paid for by the federal government.  They on the whole are excellent.  They on the whole are very vigorous and skillful in trying to advocate for their clients.  I have never in my life seen a hint that the fact that they are paid for by the federal government has affected their representation.

*Id.* at 28-29.

After this extensive colloquy — during which Scott was explicitly warned that the practical effect of his refusal to accept representation from a court-appointed attorney would be that he would have to proceed pro se — Scott confirmed that he did not want Martinez or any other court-appointed lawyer to represent him. *Id*. at 29-30.  Under these circumstances, Scott's waiver of his Sixth Amendment right to counsel was knowing, intelligent, and voluntary. *See Jones v. Norman*, 633 F.3d 661, 667 (8th Cir. 2011) ("The key inquiry in determining whether a *Faretta* request was knowingly and voluntarily made is whether the accused was made sufficiently aware of his right to have counsel and of the possible consequences of a decision to forego the aid of counsel." (citations and quotations omitted)).  Scott is not entitled to relief on Ground One.

### B.  Ground Two

Scott next contends that Martinez's representation of him from August 21, 2008 (the date of Martinez's appointment) until September 17, 2008 (the date Martinez was permitted to withdraw) was deficient.  Specifically, Scott contends that Martinez failed to investigate the

case, failed to meet with Scott, and failed to explain that there was no real conflict of interest inherent in Martinez's receipt of compensation from the government.

To prevail on a claim of ineffective assistance of counsel, Scott must show that (1) his counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).  The reasonableness of counsel's conduct should be considered in light of the defendant's own statements and actions. *Id.* at 691.

Just two weeks after Martinez was appointed (and only ten days after Martinez filed a notice of appearance), Scott informed Martinez that he did not want Martinez as his counsel because he believed that any government-compensated attorney would have a conflict of interest.  The Court doubts that Martinez could be considered ineffective for failing to complete a full-blown investigation of Scott's case in the short time before Scott fired him.  And even after being fired by Scott, Martinez took steps to protect Scott's interests:  Martinez sent Scott the discovery that the government had provided, Docket No. 89 at 5; Martinez moved for Scott to be allowed to proceed pro se, Docket No. 44; and Martinez filed four motions on Scott's behalf seeking discovery and severance, Docket Nos. 45-48.  Under the circumstances, Martinez's conduct was reasonable and professional.

But even if Martinez's performance could be considered deficient in some respect, Scott cannot show prejudice.  As discussed above, Scott repeatedly objected to Martinez's representation and in fact informed the Court that he was terminating Martinez *ab initio*. *See* Docket No. 43.  In addition, the Court advised Scott about the nature of the charges and

penalties he was facing, informed him that there was no real conflict of interest, and urged him to accept representation.  Despite these multiple warnings, Scott refused to accept Martinez's help; in fact, Scott even objected to Martinez's appointment as standby counsel and refused to allow Martinez to sit next to him at counsel table.  *See* Docket No. 369 at 27, 31.  Scott also refused to adopt the motions that Martinez had filed on his behalf before the representation was terminated.  Docket No. 53 at 3-4; Docket No. 89 at 23-24.  Given Scott's repeated and emphatic refusal to *accept* Martinez's help, there is no reason to believe that Martinez's alleged failure to investigate the case or meet with Scott in the short period of time before Scott began representing himself had any effect on the outcome of Scott's case.  Scott is not entitled to relief on Ground Two.

*C.  Ground Three*

Finally, Scott argues that Martinez's assistance as standby counsel was ineffective.  As discussed above, Scott knowingly and voluntarily invoked his right to self-representation.  Having done so, he cannot complain that he did not receive effective assistance of counsel.  There is no constitutional right to *any* standby counsel, much less effective standby counsel.  *See United States v. Foster*, 230 F.3d 1364 (Table), 2000 WL 1511762, at *1 (8th Cir. Oct. 12, 2000) (there is no constitutional right to standby counsel and a defendant who invokes his right to self-representation cannot claim ineffective assistance of standby counsel); *cf. Faretta*, 422 U.S. at 834 n.46 ("whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel'"); *Noe*, 601 F.3d at 792 ("Where there is no constitutional right to counsel there can be no right to effective assistance of counsel." (citation and quotations omitted)).

Moreover, Scott's argument that he received ineffective assistance from Martinez is absurd. As described at length, Scott made clear that he would have nothing whatsoever to do with Martinez or any other attorney compensated by the government. Scott's two co-defendants — who shared Scott's anti-government views and also chose to represent themselves — sat near their standby counsel and sought advice from their standby counsel on several occasions. Alone among the defendants, Scott shunned his standby counsel and refused even to sit near him. How Martinez was supposed to provide assistance to Scott when Scott refused to be near him is a mystery.

This Court urged Scott — again and again — to accept representation from a court-appointed attorney. Instead of permitting a skilled and experienced attorney to defend him at trial, Scott chose to make a political statement, sitting in stony silence and refusing to allow his standby counsel even to sit near him. Scott's legal rights were scrupulously protected, and he has no one to blame but himself for his predicament. His § 2255 motion is denied.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant Brian Keith Scott's 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence [Docket No. 366 in No. 08-CR-0270(5)] is DENIED.

2. No certificate of appealability will issue.

Dated: May  2 , 2011                                s/Patrick J. Schiltz
                                                    Patrick J. Schiltz
                                                    United States District Judge